DARIN B. GOFF (11355)
CRAIG L. PANKRATZ (12194)
GREG HEWITT (18017)
Assistant Utah Attorneys General
DEREK E. BROWN (10476)
Utah Attorney General
160 E 300 S, 6th Floor
Salt Lake City, UT 84114
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dgoff@agutah.gov
        cpankratz@agutah.gov
        gahewitt@agutah.gov

*Attorneys for Defendants Jared Garcia, Brian Nielsen, Sharon D'Amico,* and *Robert Powell*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JASON FREEZE,<br>    Plaintiff,<br><br>v.<br><br>JARED GARCIA, et al.,<br>    Defendants. | **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:24-cv-00640-DBB<br><br>Judge David Barlow |

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ...................................................................... iii

RELIEF SOUGHT AND GROUNDS FOR MOTION .................................... 1

THE FIRST AMENDED COMPLAINT'S ALLEGATIONS .......................... 2

STANDARD OF REVIEW ......................................................................... 3

ARGUMENT ........................................................................................... 4

1. Supervisor Defendants in their official capacities are not persons under §
   1983… ............................................................................................ 4

2. Qualified immunity bars Plaintiff's individual capacity claims. ......................... 5

   2.1    Plaintiff has not alleged a constitutional violation based on supervisory
   liability. ........................................................................................ 6

      2.1.1    The FAC does not sufficiently allege personal involvement. ........... 7

      2.1.2    The FAC does not sufficiently allege causation. ........................... 12

      2.1.3    The FAC does not sufficiently allege Supervisor Defendants acted
      with the requisite state of mind. ................................................ 16

2.2 Plaintiff cannot prove Supervisor Defendants violated clearly established
   law……………………………………………………………………….. 20

CONCLUSION ...................................................................................... 23

WORD COUNT CERTIFICATION .......................................................... 24

**TABLE OF AUTHORITIES**

*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*,
    159 F.3d 1253 (10th Cir. 1998) ........................................................ 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................ 4, 6, 7, 18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................... 4, 18

*Burke v. Regalado*,
    935 F.3d 960 (10th Cir. 2019) ..................................................... 7, 20

*Carabajal v. City of Cheyenne*,
    847 F.3d 1203 (10th Cir. 2017) .................................................... 5, 21

*City & Cnty. of S.F. v. Sheehan*,
    575 U.S. 600 (2015) ....................................................................... 21

*City of Escondido v. Emmons*,
    586 U.S. 38 (2019) ......................................................................... 22

*City of Philadelphia v. Fleming Co.*,
    264 F.3d 1245 (10th Cir. 2001) ....................................................... 18

*Contreras v. Doña Ana Cnty. Bd of Ct. Comm'rs*,
    965 F.3d 1117 (10th Cir. 2020) ....................................................... 16

*Dodds v. Richardson*,
    614 F.3d 1185 (10th Cir. 2010) .................................................... 6, 16

*Estate of Booker v. Gomez*,
    745 F.3d 405 (10th Cir. 2014) .......................................................... 7

*Harris v. Champion*,
    51 F.3d 901 (10th Cir. 1995) ............................................................ 4

*Hemry v. Ross*,
    62 F.4th 1248 (10th Cir. 2023) ......................................................... 5

*Howard v. Waide,*
   534 F.3d 1227 (10th Cir. 2008) ................................................................ 16, 17

*Jojola v. Chavez,*
   55 F.3d 488 (10th Cir. 1995) ...................................................................... 4

*Keith v. Koerner,*
   843 F.3d 833 (10th Cir. 2016) ................................................................ 7, 12

*Khalik v. United Air Lines,*
   671 F.3d 1188 (10th Cir. 2012) .............................................................. 3, 4

*Lewis v. Tripp,*
   604 F.3d 1221 (10th Cir. 2010) ........................................................... 12, 13

*Martinez v. Carson,*
   697 F.3d 1252 (10th Cir. 2012) ............................................................... 12

*Matney v. Barrick Gold of N.A.,*
   80 F.4th 1136 (10th Cir. 2023) ................................................................. 9

*Miljkovic v. Redd,*
   No. 2:23-CV-00526-JNP-DBP, 2024 WL 4308927 (D. Utah Sept. 26, 2024) ........
   ................................................................................. 9, 10, 15, 18

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ............................................................................ 5, 20

*Perry v. Durborow,*
   892 F.3d 1116 (10th Cir. 2018) ............................................................... 22

*Porro v. Barnes*
   624 F.3d 1322 (10th Cir. 2010) ................................................................. 7

*Robbins v. Oklahoma,*
   519 F.3d 1242 (10th Cir. 2008) ............................................................... 10

*Saucier v. Katz,*
   533 U.S. 194 (2001) ............................................................................... 5

*Serna v. Colo. Dep't of Corr.,*
  455 F.3d 1146 (10th Cir. 2006) ......................................................... 8

*Shauf v. Rios,*
  313 F. Supp. 3d 1262 (W.D. Okla. 2018) ................................... 17, 18

*Tafoya v. Salazar,*
  516 F.3d 912 (10th Cir. 2008) .................................................... 17, 18

*Toevs v. Reid,*
  685 F.3d 903 (10th Cir. 2012) ........................................................... 5

*Waller v. City & Cnty. of Denver,*
  932 F.3d 1277 (10th Cir. 1289) .................................................. 17, 18

*White v. Pauly,*
  580 U.S. 73 (2017) ...................................................................... 21, 22

*Will v. Mich. Dept. of State Police,*
  491 U.S. 58 (1989) ............................................................................ 4

*Ziglar v. Abbasi,*
  582 U.S. 120 (2017) ........................................................................ 21

Statutes

42 U.S.C. § 1983 .................................................................... 1, 4, 5, 6

Rules

Federal Rule of Civil Procedure 12(b)(6) ....................................... 1, 3

Other Authorities

*DUCivR 7-1(a)(4)* ............................................................................ 24

## <u>RELIEF SOUGHT AND GROUNDS FOR MOTION</u>

Defendants Jared Garcia—Executive Director of the Utah Department of Corrections ("UDOC"), Brian Nielsen—former Executive Director of UDOC, Sharon D'Amico—Warden of the Utah State Correctional Facility ("USCF"), and Robert Powell—former Warden of USCF (collectively "Supervisor Defendants"), through counsel, move under Federal Rule of Civil Procedure 12(b)(6) for the Court to dismiss all claims asserted against them in the First Amended Complaint ("FAC") (Doc. 10) with prejudice.

Plaintiff Jason Freeze ("Plaintiff") filed his complaint (Doc. 2) on August 29, 2024, and amended it on February 25, 2025. The FAC asserts Eighth Amendment claims against Supervisor Defendants and John Does 3-10 in their official and individual capacities. The claims against Supervisor Defendants should be dismissed with prejudice for the following reasons:

- In their official capacities, Supervisor Defendants are not persons under 42 U.S.C. § 1983, and

- Supervisor Defendants are entitled to qualified immunity because the FAC fails to allege they violated Plaintiff's clearly established Eighth Amendment rights.

## THE FIRST AMENDED COMPLAINT'S ALLEGATIONS[1]

USCF began operating in July 2022.[2] "Reports of assaults began increasing shortly after [it] opened . . . ."[3] And as of October 2022, only 254 of 650 positions at USCF had been filled.[4]

In March 2023, Plaintiff was an inmate at USCF and believed he was in danger.[5] He spoke with "staff members" and "officers assigned to gang intervention" and told them gang members "had ordered a 'hit' on him."[6] But the "staff members" and "officers" "ignored" him.[7] About two weeks later, "more staff members on the SWAT team intercepted a kite," a written message from an inmate, "that a 'hit' would be ordered on [Plaintiff] if he refused to violently assault another inmate."[8] But those "staff members" did not tell Plaintiff about the kite, and Plaintiff refused to assault the other inmate.[9]

On April 18, 2023, "a SAC gang member" attacked and stabbed Plaintiff four

---

[1] For purposes of this motion only, Supervisor Defendants do not challenge the FAC's well-pleaded allegations. Additional allegations will be discussed as necessary in the Argument section.
[2] FAC ¶ 14, (Doc. 10).
[3] *Id.* ¶ 15.
[4] *Id.*
[5] *Id.* ¶¶ 1, 16-17.
[6] *Id.* ¶ 17.
[7] *Id.*
[8] *Id.* ¶ 18.
[9] *Id.* ¶¶ 18-19.

times.[10] Plaintiff was hospitalized and, after receiving treatment, "was returned to his same housing cell" instead of "protected custody" or "a section with non-active gang members."[11] Returning Plaintiff to the same housing cell allegedly violated "[i]nternal polices which set forth how inmates should be housed following an assault."[12]

Plaintiff continued to feel unsafe and asked "gang officers" and "staff" for help.[13] They ignored him.[14] And he was attacked and stabbed twelve times on May 2, 2023.[15] The attacks caused him to suffer broken bones, nerve damage, and continuing pain.[16]

## STANDARD OF REVIEW

A court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) unless it states a plausible claim. *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012). The court must disregard conclusory allegations and look only to whether the remaining factual allegations plausibly suggest the defendant

---

[10] *Id.* ¶ 19.

[11] *Id.* ¶¶ 19-20.

[12] *Id.* ¶ 20.

[13] *Id.* ¶ 21.

[14] *Id.*

[15] *Id.* ¶ 22.

[16] *Id.* ¶ 23.

is liable. *Id.* at 1191. Although well-pleaded factual allegations are accepted as true, legal conclusions are not. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009). Accordingly, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).

## ARGUMENT

### 1. Supervisor Defendants in their official capacities are not persons under § 1983.

Plaintiff's § 1983 official capacity claims against Supervisor Defendants must be dismissed. Section 1983 provides a remedy against "persons" who violate federal rights while "acting under color of state law." 42 U.S.C. § 1983; *Jojola v. Chavez,* 55 F.3d 488, 492 (10th Cir. 1995). Only a "person," as interpreted by federal case law, is a proper defendant. *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989). "Neither the state, nor a governmental entity that is an arm of the state . . . nor a state official who acts in his or her official capacity, is a 'person' within the meaning of § 1983." *Harris v. Champion,* 51 F.3d 901, 905–906 (10th Cir. 1995). Supervisor

Defendants are state officials.[17] Thus, in their official capacities, they are not persons under § 1983, and the official capacity claims against them must be dismissed.

## 2. Qualified immunity bars Plaintiff's individual capacity claims.

Supervisor Defendants are entitled to qualified immunity on Plaintiff's claims. Qualified immunity bars claims against government officials whose discretionary acts do not violate clearly established rights. *Toevs v. Reid,* 685 F.3d 903, 909 (10th Cir. 2012); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001). To determine whether a defendant is entitled to qualified immunity, a court must conduct a two-part inquiry. *Pearson v. Callahan,* 555 U.S. 223, 232–33 (2009); *Hemry v. Ross,* 62 F.4th 1248, 1253 (10th Cir. 2023); *Carabajal v. City of Cheyenne,* 847 F.3d 1203, 1208 (10th Cir. 2017). First, it must determine whether the plaintiff's complaint sufficiently alleges the defendant violated her constitutional rights. *Id.* Second, it must determine whether her allegedly violated rights were clearly established. *Id.* The plaintiff bears the burden to satisfy each part of the inquiry. *Id.* "If the plaintiff fails to satisfy either part . . . the court must grant qualified immunity" and dismiss her claims. *Carabajal,* 847 F.3d at 1208. Here, Plaintiff cannot satisfy either prong of qualified immunity.

---

[17] FAC ¶¶ 3, 5, 7, 9.

### 2.1 Plaintiff has not alleged a constitutional violation based on supervisory liability.

The FAC does not allege that Plaintiff ever spoke with Supervisor Defendants, they intercepted the kite, they returned him to the same housing unit, or they ignored his requests for help.[18] Instead, it alleges Warden Powell and Director Nielsen had supervisory authority over the correctional officers at USCF and promulgated prison safety policies.[19] It also alleges "Defendants Garcia and D'Amico have taken over the leadership roles formerly held by Director Nielsen and Warden Powell" and have continued the policies and practices of their predecessors.[20] Thus, Plaintiff's individual capacity claims against Supervisor Defendants rely entirely on a supervisory liability theory.

But the FAC does not show supervisory liability. Section 1983 imposes liability on supervisors only if their "own individual actions . . . violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Respondeat superior, which holds masters vicariously liable for their subordinates' conduct, is inapplicable. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Supervisors are not liable under § 1983 unless they engage in "deliberate,

---

[18] FAC ¶¶ 14-22, 35.
[19] *Id.* ¶¶ 24-25.
[20] *Id.* ¶ 26.

intentional" conduct that violates another's rights. *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010). Having only "abstract authority" is insufficient to make supervisors liable for subordinate misconduct. *Iqbal*, 556 U.S. at 677. Merely knowing about or even acquiescing in subordinate misconduct is also insufficient. *Id.* Rather, to show supervisory liability, a complaint must sufficiently allege three elements: "(1) personal involvement; (2) causation; and (3) state of mind." *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016). Dismissal is appropriate where the plaintiff fails to establish any of these elements. *Id.* Here, Plaintiff has not sufficiently alleged any of the required elements, and dismissal is appropriate on each independent ground.

### 2.1.1 The FAC does not sufficiently allege personal involvement.

The FAC fails to allege Supervisor Defendants were personally involved in the alleged violation of Plaintiff's rights. To establish a supervisor's personal involvement, a complaint must show "an affirmative link between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quotations omitted). An affirmative link exists if the supervisor established, utilized, promulgated, created, implemented, or possessed responsibility for a policy or custom resulting in the violation. *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (quotations omitted). But the affirmative link

"must be based upon active unconstitutional behavior and more than a mere right to control employees." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152–53 (10th Cir. 2006) (quotations omitted).

There is no affirmative link between Director Garcia's and Warden D'Amico's actions and Plaintiff's injuries. Director Garcia did not become UDOC's executive director, and Warden D'Amico did not become USCF's warden, until after Plaintiff was attacked.[21] As such, it was impossible for them to establish, utilize, promulgate, create, implement, or possess responsibility for a policy or custom resulting in the violation of Plaintiff's rights.

The FAC also fails to show an affirmative link between Director Nielsen's and Warden Powell's actions and Plaintiff's injuries. The FAC alleges Director Nielsen and Warden Powell

- were "responsible for ensuring the safety and well-being of inmates incarcerated at USCF"

- "oversaw, supervised, and were directly responsible for the hiring, training and supervision of the correctional officers charged with keeping [Plaintiff] safe"

- "were directly involved in promulgating policies surrounding the safety of

---

[21] FAC ¶¶ 3-10.

prisoners"

- "promulgat[ed] jail policies that continually failed to keep [Plaintiff] and other inmates safe from violent assaults," and

- "fail[ed] to supervise the correctional officers" who allegedly took no action to protect Plaintiff.[22]

These allegations are conclusory. Conclusory allegations assert inferences "without stating underlying facts or including any factual enhancement." *Matney v. Barrick Gold of N.A.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (internal citations omitted). The FAC does not state any underlying facts or include any factual enhancement to support any of the foregoing allegations. At most, the allegations show Director Nielsen and Warden Powell had abstract authority over USCF and its correctional officers. But they do not show if or how Director Nielsen and Warden Powell were involved in USCF's day-to-day, on-the-ground operations or the degree to which they exercised control over prison employees. They also fail to identify a specific policy either defendant promulgated that could possibly have resulted in Plaintiff's injuries.

Courts have dismissed claims against supervisor defendants based on similar conclusory allegations. For example, in , the plaintiff was brutally assaulted while

---

[22] *Id.* ¶¶ 6, 10, 24-25, 37-38.

incarcerated after an employee negligently opened the wrong cell doors at the prison. *Miljkovic v. Redd* No. 2:23-CV-00526-JNP-DBP, 2024 WL 4308927, at *1 (D. Utah Sept. 26, 2024) (unpublished). The plaintiff claimed that his injuries stemmed from the supervisor defendants inadequately training and supervising the prison employees, as well as deficient policies. *Id.* at **5–6. But because the plaintiff did not "identify a specific deficiency" in the supervisor defendants' training, supervision, or policies "closely related to his ultimate injury," the plaintiff did not sufficiently allege a supervisory liability claim under § 1983. *Id.* at *6 (quotations omitted). And because the plaintiff "fail[ed] to identify specifically what alleged failures are attributable to which Defendant," the complaint did not "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)).

Similarly, the FAC does not allege any specific deficiencies in the Supervisor Defendants' training, supervision, or policy. Nor does it provide each individual defendant sufficient notice of what they did that was unconstitutional. Like the claims in *Miljkovic*, Plaintiff's claims should be dismissed.

In fact, without identifying any specific policy, the FAC expressly alleges

prison employees violated prison policies.[23] According to the FAC, the prison has internal policies "which set forth how inmates should be housed following an assault[,]" and Plaintiff was returned to his prior housing unit in violation of those policies.[24] It does not allege Director Nielsen or Warden Powell participated in any way in that housing decision. Instead, prison employees seemingly contravened Director Nielsen's and Warden Powell's policies.

Further, the FAC's allegation that USCF was understaffed does not show an affirmative link between Director Nielsen's and Warden Powell's actions and the alleged violation of Plaintiff's rights. There are multiple possible reasons why USCF was understaffed, many of which are outside of Director Nielsen and Warden Powell's control. For example, there may have been a dearth of qualified applicants and employees could also have resigned *en masse*, etc. Without allegations based on factual averments regarding the reasons for understaffing, the FAC fails to plausibly show Director Nielsen and/or Warden Powell purposefully decided to understaff USCF in a way that could give rise to supervisory liability for a constitutional violation based on this theory.

And the FAC does not plausibly show Director Nielsen or Warden Powell

---

[23] *See* FAC ¶ 20.
[24] *Id.*

11

failed to supervise anyone at USCF. It does not describe any specific supervisory duties either of them had over USCF employees. Neither does it show how they may have failed to perform any such duties.

Thus, the FAC fails to allege Supervisor Defendants were personally involved in any violation of Plaintiff's rights.

### 2.1.2  The FAC does not sufficiently allege causation.

The FAC also fails to show causation. Causation exists if a supervisor "deliberately set in motion a series of events that . . . he knew or [reasonably] should've known would lead to *unlawful* action." *Lewis v. Tripp*, 604 F.3d 1221, 1228 (10th Cir. 2010); *Keith v. Koerner*, 843 F.3d 833, 847 (10th Cir. 2016). A supervisor who engages in lawful conduct does not and cannot know his actions would lead to constitutional violations. *See Lewis*, 604 F.3d at 1228-30. Instead, a supervisor knows or should know his conduct would lead others to act unlawfully when additional constitutional violations are the natural consequences of the supervisor's own unlawful conduct. *See Martinez v. Carson*, 697 F.3d 1252, 1255–56 (10th Cir. 2012).

*Lewis* illustrates that supervisors who act lawfully do not and cannot know their actions would lead to constitutional violations. There, Lewis was a chiropractor, and a state board of chiropractic examiners revoked his license. *Lewis*,

604 F.3d at 1223. The board later received information Lewis continued to practice. *Id.* The board's president communicated with its executive director, its legal counsel, and local law enforcement officials about Lewis' suspected unlicensed practice. *Id.* at 1223–24. The executive director then executed an administrative subpoena requiring Lewis to produce medical records and patient information. *Id.* at 1224. The director went to Lewis' office with two sheriffs and served the subpoena. *Id.* Lewis' receptionist provided documents, and someone searched Lewis' desk and seized additional documents. *Id.* Lewis sued the board president because the director or sheriffs treated the subpoena like a warrant and used it to illegally search his desk. *Id.*

The Tenth Circuit determined the board president did not and could not have known his conduct would lead to an illegal search and seizure. *Id.* at 1228–30. The board president did not tell the director to execute the subpoena, to treat it like a search warrant, or to use it to search Lewis' desk. *Id.* at 1230. He only reported Lewis' unlicensed practice to the authorities, something his job authorized him to do. *Id.* That is, he was just doing his job. *Id.* And because he was just doing his job, Lewis failed to show the board president's conduct caused the search and seizure. *Id.*

It was impossible for Director Garcia and Warden D'Amico to have engaged

in conduct they knew or should have known would have led to the alleged violation of Plaintiff's rights. Again, they did not occupy their positions until after Plaintiff was attacked. Thus, the FAC fails to allege they caused the alleged violation.

The FAC also fails to allege Director Nielsen and Warden Powell caused any violation of Plaintiff's rights. Nothing shows they did anything other than what their jobs authorized them to do. In fact, the FAC's allegations against them are wholly conclusory, and it is impossible to infer whether they engaged in any conduct at all that is relevant to Plaintiff's claims. So, the FAC fails to show Director Nielsen and Warden Powell were not doing anything other than their jobs. Like the board president in *Lewis*, they did not and could not have known their conduct would lead to Plaintiff suffering any violation of his rights.

And even if the FAC showed Director Nielsen and/or Warden Powell were responsible for USCF's understaffing (again, it does not), it does not sufficiently allege understaffing caused Plaintiff to be attacked. USCF was allegedly understaffed in October 2022, but Plaintiff was not attacked until April and May 2023. Nothing in the FAC indicates USCF was understaffed when the attacks happened.

Regardless, the FAC also fails to show understaffing could have caused Plaintiff's injuries. According to the FAC, the first attack occurred after prison

employees ignored him when he raised concerns about his safety, and the second attack occurred after they returned him to the same housing unit. The FAC lacks any factual development about the reasons for these actions. These actions, on their face, appear entirely unrelated to staffing issues. It is unclear how the staffing of more USCF employees would have prevented the alleged constitutional violations or Plaintiff's ultimate injuries. Thus, any inference understaffing somehow caused prison employees to ignore him or return him to the same housing unit would be speculative and cannot support Plaintiff's claim. *See Miljkovic*, 2024 WL 4308927, at *6 (holding that the plaintiff's similar allegations that a warden and executive director of a prison failed to properly train and supervise employes, and implement prison policies, did not "provide enough detail to establish a connection between" the supervisor defendants and the ultimate injuries).

Likewise, the FAC fails to show any failure to supervise could have caused the alleged violation of Plaintiff's rights. Nothing in it supports an inference Director Nielsen and Warden Powell were involved in any way with the response to Plaintiff's alleged requests for help or the decision to return him to the same housing unit after the first attack. Thus, no allegations describe any allegedly unlawful conduct they knew or should have known would have led to the alleged attacks.

Therefore, the FAC fails to sufficiently allege Supervisor Defendants' actions

caused the alleged violation of Plaintiff's rights.

### 2.1.3 The FAC does not sufficiently allege Supervisor Defendants acted with the requisite state of mind.

Finally, the FAC fails to show Supervisor Defendants acted with the requisite state of mind. To establish supervisory liability, the supervisor must have acted with the state of mind necessary to establish the underlying violation. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Plaintiff asserts an Eighth Amendment failure to protect claim. The state of mind necessary to establish this claim is deliberate indifference. *Contreras v. Doña Ana Cnty. Bd of Ct. Comm'rs*, 965 F.3d 1117, 1130 (10th Cir. 2020). Thus, the FAC must show Supervisor Defendants acted with deliberate indifference.[25]

But the FAC fails to allege deliberate indifference. Deliberate indifference has objective and subjective requirements. *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008). Under the objective requirement, the plaintiff "must show that the conditions of his incarceration present an objective substantial risk of serious

---

[25] Supervisor Defendants assume for the purpose of this motion only that the requisite state of mind for an Eighth Amendment supervisory liability claim is deliberate indifference, although the question remains unclear post-*Iqbal*. *See Dodds*, 614 F.3d at 1210 (Tymkovich, J., concurring) (stating that the older mental state of deliberate indifference "now appears insufficient to prove causation, and thereby prove liability," but the required stronger mental state, while at least deliberate indifference, is yet to be determined).

harm." *Id.* (internal citations omitted). Under the subjective requirement, the plaintiff "must show that prison officials had subjective knowledge of the risk of harm." *Id.* Prison officials act with subjective knowledge only if they are "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists" and they actually "draw the inference." *Id.* But "[t]he official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). The FAC does not satisfy the subjective requirement.

It was impossible for Director Garcia and Warden D'Amico to have known Plaintiff faced a substantial risk of serious harm. Again, they did not occupy their positions until after Plaintiff was attacked. Thus, the FAC fails to allege they acted with deliberate indifference.

No allegations show Director Nielsen and Warden Powell had subjective knowledge of a substantial risk of harm to Plaintiff, either. It is not enough to merely allege a defendant "knew" of a substantial risk of harm. *See Shauf v. Rios*, 313 F. Supp. 3d 1262, 1269 (W.D. Okla. 2018); *see also Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1289 (10th Cir. 1289) (stating allegations a defendant "knew or should have known" are conclusory). A defendant's subjective knowledge

is an inference that must be supported with underlying facts and factual enhancement. *Iqbal*, 556 U.S. at 686–87; *Waller*, 932 F.3d at 1289; *City of Philadelphia v. Fleming Co.*, 264 F.3d 1245, 1263 (10th Cir. 2001); *Shauf*, 313 F. Supp. 3d at 1269. Thus, a complaint must allege "facts—be they circumstantial or direct . . .—that make [subjective knowledge] 'plausible.'" *Shauf*, 313 F. Supp. 3d at 1269 (citing *Twombly*, 550 U.S. at 547 & *Tafoya*, 516 F.3d at 916–17).

The FAC asserts "defendants knew or should have known" Plaintiff faced a substantial risk of harm because he repeatedly asked for help, "Staff" intercepted a threatening kite, and he was attacked twice.[26] There are two problems with these allegations. First, whether Director Nielsen and Warden Powell should have known Plaintiff was in danger is irrelevant. "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not . . . a constitutional violation." *Tafoya*, 516 F.3d at 916; *see also Miljkovic*, 2024 WL 4308927, at *7 ("[T]he allegation that Defendants 'should have known' is insufficient to establish deliberate indifference . . . ."). So, even if Director Nielsen and Warden Powell should have known he was in danger, they did not violate his Eighth Amendment rights unless they actually knew he was in danger.

---

[26] FAC ¶ 24.

Which leads to the second problem: the FAC lacks any allegations supporting an inference Director Nielsen and Warden Powell knew Plaintiff asked for help, "Staff" intercepted the kite, or he was attacked. According to the FAC, before the first attack, he told "staff members," who he later identifies as John Does 3-10, he had been threatened.[27] But there are no allegations that he spoke to Director Nielsen and Warden Powell or that John Does 3-10 told them about the threats.[28] Additionally, the FAC alleges "staff members on the SWAT team," also identified as John Does 3-10, "intercepted" the threatening kite but does not allege any facts showing John Does 3-10 informed Director Nielsen and Warden Powell about it or its contents.[29] The FAC also alleges after the first attack, Plaintiff again sought help from "several of the staff" and "staff members" and identified those he spoke to as John Does 3-10.[30] Again, nothing in the FAC shows John Does 3-10 relayed Plaintiff's requests or information about the first attack to Director Nielsen and Warden Powell.[31] Thus, the FAC fails to show Director Nielsen and Warden Powell knew Plaintiff faced a substantial risk of harm.

The FAC also fails to show Director Nielsen and Warden Powell knew of a

---

[27] *Id*. ¶17.

[28] *Id*.

[29] *Id*. ¶ 18.

[30] *Id*. ¶ 21.

[31] *Id*.

broader risk of harm arising from inadequate supervision and understaffing. It merely alleges, without any factual development, they failed to supervise USCF's employees.[32] It does not identify a single incident when an assault could be attributed to improper supervision, let alone allege Director Nielsen and Warden Powell knew about any such incident.[33] And as discussed above, although USCF might have been understaffed when it opened and in October 2022, no allegations show it remained understaffed in April and May 2023. *Supra* 2.2. Thus, the FAC does not sufficiently allege Director Nielsen and Warden Powell subjectively knew improper supervision and understaffing created a substantial risk of harm to inmates in April and May 2023.

Thus, the FAC fails to allege Supervisor Defendants acted with deliberate indifference to any risk of harm.

## 2.2 Plaintiff cannot prove Supervisor Defendants violated clearly established law.

The second prong of qualified immunity requires a plaintiff to show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan,* 555 U.S. 223, 232 (2009); *see also Burke v. Regalado,* 935 F.3d 960, 1002 (10th Cir. 2019). Satisfying each prong of qualified

---

[32] *Id.* ¶¶ 24, 38.

[33] *See id.* ¶¶ 14-39.

immunity is a "heavy burden." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). Plaintiff has not met this burden because he has not shown a constitutional violation as explained above. But even if Plaintiff somehow alleged viable claims against Supervisor Defendants, he cannot prove the rights they allegedly violated were clearly established.

A "clearly established" right is one that makes it apparent that the defendant's conduct is unlawful "in light of preexisting law." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998). In other words, qualified immunity must be granted "if a reasonable officer might not have known for certain that the conduct was unlawful." *Ziglar v. Abbasi*, 582 U.S. 120, 124 (2017).

To satisfy the clearly established prong of qualified immunity, plaintiffs usually "show[] that there is a Supreme Court or Tenth Circuit opinion on point, or that his or her proposition is supported by the weight of authority from other courts." *Id.* It "does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotations omitted). The Supreme Court has repeatedly told lower courts "not to define clearly established law at a high level of generality." *City & Cnty. of S.F. v.*

*Sheehan*, 575 U.S. 600, 613 (2015) (quotations omitted). "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. at 79. That is, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).

For supervisory liability claims under section 1983, to satisfy the second prong, the plaintiff must show that existing law at the time of the violation would put a reasonable official in the supervisor's position "on notice that his *supervisory conduct* would violate [the plaintiff's] constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (quotations omitted). It is not sufficient to merely show that the underlying constitutional violation involved a clearly established right. *Id.* Rather, the focus is on the actions of the supervisor. *Id.* Here, Plaintiff bears the heavy burden of satisfying the second prong by providing Supreme Court or Tenth Circuit caselaw putting beyond debate that the Supervisor Defendants' actions were unconstitutional.

Plaintiff cannot provide appropriate caselaw establishing the second prong of qualified immunity. As to Director Garcia and Warden D'Amico, Plaintiff cannot produce any caselaw showing supervisors can be held liable for alleged violations occurring before the supervisors assumed their supervisory role.

As to Director Nielsen and Warden Powell, Plaintiff's allegations are that they

"promulgat[ed] jail policies that continually failed to keep [Plaintiff] and other inmates safe from violent assaults" and "fail[ed] to supervise the correctional officers" who allegedly took no action to protect Plaintiff. The lack of specificity of these allegations, along with their conclusory nature, make it impossible for Plaintiff to provide similar caselaw showing that Director Nielsen and Warden Powell must have known that their actions were unconstitutional. Any caselaw Plaintiff may provide would lack "particularized" similarities to the factual allegations in the FAC. Thus, Plaintiff cannot satisfy the second prong of qualified immunity and the claims against Defendants must be dismissed.

## CONCLUSION

This Court should dismiss Plaintiff's claims against Supervisor Defendants. They cannot be sued under § 1983 in their official capacities because they are not "persons." They are also entitled to qualified immunity because the FAC fails to show they violated Plaintiff's clearly established Eighth Amendment rights.

WHEREFORE, PREMISES CONSIDERED Defendants Jared Garcia, Brian Nielsen, Sharon D'Amico, and Robert Powell request that Plaintiff's claims against them be dismissed with prejudice.

RESPECTFULLY SUBMITTED THIS 25th day of April, 2025.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/Darin B. Goff
DARIN B. GOFF (11355)
CRAIG L. PANKRATZ (12194)
GREG HEWITT (18017)
Assistant Utah Attorneys General
*Attorneys for Defendants Jared Garcia, Brian Nielsen, Sharon D'Amico, and Robert Powell*

**WORD COUNT CERTIFICATION**

*I, Darin B. Goff, certify that this Motion to Dismiss contains **4,744** words and complies with DUCivR 7-1(a)(4).*

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/Darin B. Goff
DARIN B. GOFF (11355)
CRAIG L. PANKRATZ (12194)
GREG HEWITT (18017)
Assistant Utah Attorneys General
*Attorneys for Defendants Jared Garcia, Brian Nielsen, Sharon D'Amico, and Robert Powell*