# THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| JASON FREEZE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JARED GARCIA, Executive Director, Utah Department of Corrections; BRIAN NIELSEN, former Executive Director, Utah Department of Corrections; SHARON D'AMICO, Warden, Utah State Correctional Facility; ROBERT POWELL, former Warden, Utah State Correctional Facility; and JOHN DOES 3-10,<br><br>　　　　Defendants. | **ORDER GRANTING [23] DEFENDANTS' MOTION TO DISMISS**<br><br>Civil No. 2:24-cv-00640-DBB<br><br>Judge David Barlow |

　　　　Before the court is a motion to dismiss filed by Defendants Jared Garcia—Executive Director of the Utah Department of Corrections ("UDOC") ("Director Garcia"), Brian Nielsen—Former Executive Director of UDOC ("Former Director Nielsen"), Sharon D'Amico—Warden of the Utah State Correctional Facility ("USCF") ("Warden D'Amico"), and Robert Powell—Former Warden of USCF ("Former Warden Powell") (collectively, "Supervisor Defendants").[1] For the reasons that follow, the motion is granted.

---

[1] Defs.' Mot. to Dismiss ("Mot."), ECF No. 23, filed April 25, 2025.

1

## BACKGROUND[2]

USCF began operating in July 2022.[3] Plaintiff alleges that reports of assaults began increasing shortly after it opened.[4] And as of October 2022, USCF was experiencing severe staffing shortages, with only 254 of 650 positions filled.[5] Correctional officers were being forced to work significant overtime hours and law enforcement officers with no corrections experience or training were being brought in to fill the gaps in staffing.[6]

On March 16, 2023, Plaintiff was an inmate at USCF and believed he was in danger.[7] He alleges that he spoke with staff members and officers assigned to gang intervention and told them gang members had ordered a "hit" on him.[8] But the staff members and officers ignored him.[9] On March 31, 2023, one or more staff members on the SWAT team intercepted a kite, a written message from an inmate, that a "hit" would be ordered on Plaintiff if he refused to violently assault another inmate.[10] But those staff members did not tell Plaintiff about the kite, and Plaintiff refused to assault the other inmate.[11]

On April 18, 2023, a gang member attacked and stabbed Plaintiff four times.[12] Plaintiff was hospitalized and, after receiving treatment, was returned to his same housing cell instead of protected custody or a section with non-active gang members.[13] Returning Plaintiff to the same

---

[2] At the motion to dismiss stage, the court accepts the FAC's well-pled factual allegations as true and views those facts in the light most favorable to the nonmoving party. *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006).
[3] First Am. Compl. ("FAC") ¶ 15, ECF No. 10, filed February 25, 2025.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* ¶ 17.
[8] *Id.*
[9] *Id.*
[10] *Id.* ¶ 18.
[11] *Id.* ¶¶ 18–19.
[12] *Id.* ¶ 19.
[13] *Id.* ¶¶ 19–20.

housing cell allegedly violated "[i]nternal polices which set forth how inmates should be housed following an assault."[14]

Plaintiff continued to feel unsafe and asked gang officers and staff for help.[15] They ignored him.[16] On May 2, 2023, Plaintiff was attacked and stabbed twelve times.[17] The attacks caused him to suffer broken bones, nerve damage, and continuing pain.[18] He reports being denied sufficient pain medication by the prison.[19] Plaintiff identifies these officers and jail staff who allegedly ignored his requests for intervention as "John Does 3-10."[20]

Plaintiff initiated this action on August 29, 2024[21] and filed an Amended Complaint ("FAC") on February 25, 2025.[22] On April 25, 2025, the Supervisor Defendants filed the instant motion to dismiss.[23] On June 3, 2025, Plaintiff filed an Opposition.[24] On June 17, 2025, the Supervisor Defendants filed a Reply.[25]

## LEGAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted. Each cause of action must be supported by sufficient, well-pled facts to be plausible on its face.[26] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[27] But the

---

[14] *Id.* ¶ 20.
[15] *Id.* ¶ 21.
[16] *Id.*
[17] *Id.* ¶ 22.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶¶ 11, 17, 18, 21, 27.
[21] Compl., ECF No. 2.
[22] First Am. Compl. ("FAC"), ECF No. 10.
[23] ECF No. 23.
[24] Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), ECF No. 28.
[25] Reply in Support of Mot. to Dismiss ("Reply"), ECF No. 29.
[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[27] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

court disregards "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law.[28]

**DISCUSSION**

The Supervisor Defendants argue that (i) they may not be sued in their official capacities under 42 U.S.C. ¶ 1983, and (ii) qualified immunity bars Plaintiff's individual capacity claims. The court considers each in turn.

**I.   Official Capacity Claims**

Section 1983 provides a remedy against "persons" who violate federal rights while "acting under color of state law."[29] "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."[30] Plaintiff does not dispute that the Supervisor Defendants are state officials and generally cannot be sued in their official capacities.[31]

However, Plaintiff argues that the Supervisor Defendants fall under the *Ex parte Young* exception to this rule because there is an ongoing violation of federal law, and the FAC seeks prospective relief.[32] Specifically, Plaintiff states that the FAC alleges an ongoing violation of federal law "such as continuing the ineffective policies and procedures that resulted in the injuries to [Plaintiff] and the inadequate medical treatment he is receiving for his injuries."[33]

First, Former Director Nielsen and Former Warden Powell cannot be liable for an ongoing violation of Plaintiff's federal rights because, as former employees, they no longer have any authority over UDOC or USCF. Second, as to Director Garcia and Warden D'Amico, the FAC provides no detail on Plaintiff's current conditions of confinement or ongoing medical

---

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).
[29] 42 U.S.C. § 1983; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995).
[30] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).
[31] Reply 7.
[32] *Buchwald v. University of N.M. Sch. Of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citing *Ex Parte Young*, 209 U.S. 123, 160 (1908)).
[33] Reply 7 (citing FAC ¶¶ 23, 26).

4

treatment and certainly nothing sufficient to plausibly allege either of these are constitutionally deficient. The FAC also does not allege any particular policies that may be constitutionally deficient. Instead, the FAC details an alleged past violation of rights and damages for that violation.

As to the second requirement, Plaintiff argues he is "seeking prospective equitable relief in his prayer for relief."[34] The prayer for relief simply lists a general catchall: "such other equitable relief as is warranted by the circumstances."[35] This is insufficient. Thus, the *Ex parte Young* doctrine does not apply. Plaintiff's claims against the Supervisor Defendants in their official capacities are dismissed.

## II. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[36] To determine whether a defendant is entitled to qualified immunity, a court must conduct a two-part inquiry.[37] First, it must determine whether the plaintiff's complaint sufficiently alleges the defendant violated her constitutional rights.[38] Second, it must determine whether her allegedly violated rights were clearly established.[39] The plaintiff bears the burden to satisfy each part of the inquiry.[40] "If the plaintiff fails to satisfy either part . . . the court must grant qualified immunity" and dismiss his claims.[41]

---

[34] Reply 7.
[35] FAC 10.
[36] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[37] *Id.* at 232–33.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017).

5

A. *Plaintiff Has Not Alleged a Constitutional Violation Based on Supervisory Liability*

Under the Eighth Amendment, prison officials must "'provide humane conditions of confinement,' which includes taking 'reasonable measures to guarantee the safety of inmates'"[42] from violence by other inmates.[43] Unlike its allegations against John Does 3-10, the FAC does not allege that Plaintiff ever spoke with the Supervisor Defendants, that they intercepted the kite, returned him to the same housing unit, or ignored his requests for help.[44] Instead, the claims against the Supervisor Defendants rely entirely on a supervisory liability theory regarding their roles in overseeing and supervising the hiring, training, and supervision of correctional officers and promulgating policies surrounding the safety of prisoners.[45]

It is well settled in the Tenth Circuit that "[u]nder § 1983, government officials are not vicariously liable for the misconduct of their subordinates."[46] Instead, supervisors may only be held liable under § 1983 "for their own culpable involvement in the violation of a person's constitutional rights."[47] To succeed on a claim of supervisor liability, Plaintiff must "show an 'affirmative link' between" the supervisor and the violation of constitutional rights.[48] To demonstrate such an "affirmative link," Plaintiff must establish "(1) personal involvement; (2) causation; and (3) state of mind."[49]

Personal involvement can be satisfied by showing that the Supervisor Defendants were "responsible for but 'failed to create and enforce policies to protect'" Plaintiff.[50] To establish

---

[42] *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1285 (10th Cir. 1999).
[43] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).
[44] *See* FAC ¶¶ 11, 17, 18, 21, 27.
[45] *See* FAC ¶¶ 24–26.
[46] *Serna v. Colorado Dep't. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).
[47] *Id.*
[48] *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018).
[49] *Id.*
[50] *Id.* at 1121–22; *see also Keith v. Kroener*, 843 F.3d 833, 838–47 (10th Cir. 2016).

6

causation, Plaintiff must show that the Supervisor Defendants "set in motion a series of events that [they] knew or reasonably should have known would cause others to deprive [Plaintiff] of [his] constitutional rights."[51] Finally, Plaintiff must "establish the requisite state of mind," which is deliberate indifference.[52] To establish that the Supervisor Defendants were deliberately indifferent to Plaintiff's safety, Plaintiff must show that they (1) were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) that they "actually drew that inference"; and (3) that they were "aware of and fail[ed] to take reasonable steps to alleviate that risk."[53]

First, Director Garcia did not become UDOC's director, and Warden D'Amico did not become USCF's warden until after Plaintiff was attacked.[54] As such, because Plaintiff has not adequately alleged an ongoing violation of his constitutional rights, Plaintiff has not plausibly pled an affirmative link between Director Garcia and Warden D'Amico and the violation of Plaintiff's constitutional rights.

As to Former Director Nielsen and Former Warden Powell, Plaintiff's allegations are conclusory. The FAC alleges that Former Director Nielsen and Former Warden Powell:

- were "responsible for ensuring the safety and well-being of inmates incarcerated at USCF";[55]
- "oversaw, supervised, and were directly responsible for the hiring, training and supervision of the correctional officers charged with keeping [Plaintiff] safe";[56]

---

[51] *Perry*, 892 F.3d at 1122.
[52] *Id.*
[53] *Id.*
[54] FAC ¶¶ 3–10.
[55] *Id.* ¶¶ 6, 10; *see also id.* ¶¶ 4, 8 (same allegations against Director Garcia and Warden D'Amico).
[56] *Id.* ¶ 24.

- "were directly involved in promulgating policies surrounding the safety of prisoners";[57]
- "promulgat[ed] jail policies that continually failed to keep [Plaintiff] and other inmates safe from violent assaults";[58] and
- "fail[ed] to supervise the correctional officers" who allegedly took no action to protect Plaintiff.[59]

Yet, Plaintiff does not identify any specific policy promulgated by Former Director Nielsen or Former Warden Powell that resulted in Plaintiff's injuries.[60] Moreover, the FAC alleges that John Does 3-10 did not follow "[i]nternal policies which set forth how inmates should be housed following an assault."[61]

Further, the FAC's allegations about a failure to supervise the jail's officers contain no factual enhancement or affirmative link between the alleged supervisory failure and Plaintiff's injuries. To the extent Plaintiff's claims against the Supervisor Defendants are based on "severe staffing shortages" in October 2022,[62] the FAC does not allege that there were still staffing shortages six months later when Plaintiff was attacked. Additionally, the FAC does not sufficiently allege that Former Director Nielsen or Former Warden Powell deliberately understaffed the prison or that additional staff would have prevented Plaintiff's attack, particularly when Plaintiff has alleged that multiple jail officers knew about and ignored both the threats against Plaintiff and the risk of placing him back in the same housing cell.

Because Plaintiff failed to "identify a specific deficiency" in the Supervisor Defendants' training, supervision, or policies "closely related to his ultimate injury," Plaintiff has failed to

---

[57] *Id.* ¶ 25.
[58] *Id.* ¶ 37.
[59] *Id.* ¶ 38.
[60] The same is true regarding Director Garcia and Warden D'Amico.
[61] *Id.* ¶ 20.
[62] *Id.* ¶ 15.

8

allege a supervisory liability claim under § 1983.[63] Additionally, the FAC violates Rule 8(a)(2)'s fair notice standards because the allegations "fail to identify specifically what alleged failures are attributable to which Defendant."[64]

As such, the FAC is dismissed against the Supervisor Defendants.

## ORDER

It is hereby ORDERED that the Supervisor Defendants' Motion to Dismiss Plaintiff's FAC is GRANTED.[65] The court FURTHER ORDERS that the FAC is DISMISSED without prejudice against the Supervisor Defendants.

Signed July 28, 2025.

BY THE COURT

David Barlow
United States District Judge

---

[63] *See Miljkovic v. Redd*, No. 2:23-cv-00526-JNP-DBP, 2024 WL 4308927, at *6 (D. Utah Sept. 26, 2024).
[64] *Id.* (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)).
[65] ECF No. 23.